# Exhibit E

**PUBLIC VERSION**

███████████████████████████████

   ████████████████████████████

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, DC**

**Before the Honorable Cameron R. Elliot**
**Administrative Law Judge**

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN LITHIUM ION BATTERIES,**<br>**BATTERY CELLS, BATTERY MODULES,**<br>**BATTERY PACKS, COMPONENTS**<br>**THEREOF, AND PROCESSES**<br>**THEREFOR** | **Investigation No. 337-TA-1159** |

**COMMISSION INVESTIGATIVE STAFF'S RESPONSE TO COMPLAINANTS LG**
**CHEM LTD. AND LG CHEM MICHIGAN INC.'S MOTION FOR DEFAULT**
**JUDGMENT, CONTEMPT, AND SANCTIONS**
**(Motion Dkt. No. 1159-013)**

On November 5, 2019, Complainants LG Chem Ltd. and LG Chem Michigan Inc.

(collectively, "Complainants" or "LGC") moved for an order finding 1) Respondents SK

Innovation Co., Ltd. and SK Battery America, Inc. (collectively, "Respondents" or "SKI") to

have engaged in spoliation of evidence, and 2) Respondents in contempt of Order No. 13

requiring forensic discovery.   *See* Motion Dkt. No. 1159-013 ("Motion") at 1-6, 67.   As the

sanction for SKI's spoliation of evidence and contempt, Complainants seek a default judgment.

*See id.*   Alternatively, if the Administrative Law Judge ("ALJ") is inclined to issue a lesser

remedy, Complainants request an order establishing that LGC owns protectable trade secrets and

that SKI has misappropriated and used those trade secrets to produce their accused products and

components.   *See id.* at 2, 67.

For the reasons set forth below, the Staff supports the Motion.   The Staff is overall of the

view that a default judgment is the most appropriate sanction for Respondents' widespread

spoliation of evidence and treatment of Order No. 13 requiring forensic discovery.   However,

the Staff also submits that an approximately two-day motion hearing may be warranted, because of the severity of the allegations of misconduct and the extraordinary nature of the relief requested by Complainants.   *See Certain Opaque Polymers*, Inv. No. 337-TA-883, Order No. 27 (Initial Determination), EDIS Doc. ID No. 545256 (Oct. 29, 2014) (holding two-day hearing before issuing dispositive sanction of default and certain monetary fees and costs for respondent's spoliation of evidence); *see also* Hearing Tr., EDIS Doc. ID Nos. 537693, 537812 (July 8-9, 2014).

## I.      FACTS

For procedural background, this investigation was instituted on May 28, 2019 based on a Complaint filed by LGC on April 29, 2019.   *See* 84 Fed. Reg. 25828-29 (June 3, 2019); *see also* Complaint, EDIS Doc. ID No. 675694 (Apr. 29, 2019).   Respondents are accused of violating Section 337 of the Tariff Act of 1930 by, *inter alia*, importing into the United States and/or selling within the United States after importation lithium-ion batteries, battery cells, battery modules, battery packs, and components thereof produced using trade secrets that SKI misappropriated from LGC.   *See id.*   The accused battery products are manufactured and sold for use as electric vehicle ("EV") batteries.   *See* Complaint, EDIS Doc. ID No. 675694 (Apr. 29, 2019), at ¶¶ 4-5.   LGC contends that it has developed and maintained the confidentiality of a substantial number of trade secrets used in the manufacturing processes for its EV battery products.   *See* Staff Ex. 1 (LGC's final disclosure of asserted trade secrets); *see also id.* at ¶¶ 4-6; *see also* Motion at 6-12 (specific examples and evidence of misappropriated trade secrets).

In April 2019, a few weeks before the Complaint in this investigation was filed, SKI had their entire ███████████ engage in a comprehensive document destruction effort to delete documents concerning Complainants LGC and other documents relevant to this Investigation.

On April 8, 2019, ████████████████████████████████████

████████████████████████████████████████████) sent a

companywide email memorandum on behalf of his team leader, ██████████, to all of the

project leaders ("PLs") in SKI's seven affiliated companies.   *See* Ex. 2(A) to SKI Opp. to Mot.

to Compel, EDIS Doc. ID No. 689925 (Oct. 1, 2019) (attaching Apr. 8, 2019 ████

memorandum); *see also* Ex. 60 to Motion (████████ at 39:21-40:50.   The April 8, 2019

memorandum states that SKI was conducting a document security inspection with inspection

targets that, among other items, included "documents that do not need to be stored," "documents

that need to be discarded since their purpose of their use has ended -- ***such as resumes***, and

"***documents that may potentially trigger unnecessary misunderstanding***."   *See* Ex. 2(A) to SKI

Opp. to Mot. to Compel, EDIS Doc. ID No. 689925 (Oct. 1, 2019) (emphases added).

According to the email memorandum, there was to be "a voluntary cleanup period [of] April 8-

12 (1 week)" with a follow-up "document security inspection: April 15 – End of May."   *See id.*

While this memorandum was sent to all PLs companywide, the specific focus for SKI's April

2019 security audit was the ████████████.   *See* Ex. 60 to Motion ████████ at 95:20-

96:13.   Any questions with respect to the memorandum were to be brought directly to the

attention of ████████   *See* Ex. 2(A) to SKI Opp. to Mot. to Compel, EDIS Doc. ID No.

689925 (Oct. 1, 2019); *see also* Ex. 73 (████████.) at ¶¶ 1-3 (████████ "job responsibilities

[at SKI] include ***handling information leaks, security solutions***, and the operation of security

infrastructure").

Shortly thereafter, ████████ subsequently prepared approximately *75* different

spreadsheets only for the particular SKI teams involved with SKI's ████████.   *See*

Motion at 19.   SKI employees are permitted to store their electronic information in ████

███████████████████████████████████████████████████

███████████ *See* Ex. 60 to Motion ████████ at 282:22-283:9 (A: "█████ are the official

storage places that we – ██████████████████ ████████ prepared the

approximately 75 spreadsheets by searching the respective ████████████████████

corresponding to each particular team associated with SKI's ████████████ for document titles

and file names that specifically referenced "████████████████████████

████████████" *See* Motion at 19-20.   The 75 spreadsheets collectively list ████████

████████ of documents with the vast majority located in SKI's Microsoft SharePoint team

rooms.  *See id.* ██████████████████████████████████████████████

████████████████"). 

On April 12, 2019, ████████ first sent individual emails with an attached spreadsheet to

each of the respective PLs for the fifty-something teams in SKI's ████████████████  *See* Ex.

60 to Motion ████████ at 129:8-130:1.  On about April 19, 2019, he further also sent emails

and spreadsheets to the PLs responsible for SKI's human resources and strategy groups whose

responsibilities partially include the ████████████████  *See id.*  In the body of each of these

spreadsheets, ████████ expressly wrote that the file listings were "documents that can be

misunderstood if accessed externally."  *See* Ex. 64 to Motion (SK00066125).  The project

leaders were instructed to remove the documents at the corresponding team's discretion.  *See*

Ex. 60 to Motion ████████ at 123:17-124:19.

<mark>Substantial evidence shows that SKI's employees in the ████████████████ mostly</mark>

<mark>complied with the April 2019 deletion exercise.</mark>  *See, e.g.*, Ex. 63 to Motion (Bolanos Decl.) at ¶

45; Ex. 67 to Motion (SK00968397); Ex. 68 to Motion (SK00969418); Ex. 69 to Motion

(SK00969430); Ex. 71 (Yang Dep.) at 97:17-98:1; Ex. 66 to Motion (SK00659635) (April 22,

2019 email with ███████████ team meeting minutes: "Regarding document security, handle them as soon as possible (delete if possible)").   As part of the same April 2019 deletion effort, there is evidence that SKI employees sometimes also renamed files that they still needed (and thus could not delete) to remove reference to LGC.   *See* Ex. 1 to Motion (SK00969443) (email from █████████████████ stating "From the competitors' information, you can sort and ***delete only the information related to*** ████████ ***or change the file name***.   (It is said that other competitor information is not an issue.)"); *see also* Ex. 70 to Motion ██████ at 95:1-17 ("I looked to see if there were search words included, and ***either changed the names or deleted the files***"); Ex. 81 to Motion (███████. At 177:2-9).

The available evidence shows that SKI's employees were by April 2019 specifically aware of and concerned about discovery in litigation that might be brought by LGC.   *See* Ex. 50 to Motion (December 21, 2018 chat message from █████ stating "***LG is preparing a lawsuit So, don't leave evidence.***").   For example, <mark>in an April 16, 2019 email, ██████████ sent an email to █████████ team with "meeting minutes" that expressly states: "Document security inspection review.   *The purpose is to prevent in advance problematic issues should a legal dispute arise with a competitor.*</mark>   Documents with sentences including the word 'competition company' is required to be deleted from within the █████████████." Ex. 3 to Motion (SK00968270).[1]

However, even after the litigation was filed, it is unclear that SKI took any significant steps to override the earlier instructions to its employees to search for and destroy documents relevant to this investigation.   First, while SKI disseminated ordinary litigation hold notices to at

---

[1] It is potentially worth noting that, in November 2018, Volkswagen had earlier announced that it had selected SKI over LGC as a supplier for its EV batteries in the U.S.   *See* Motion at 16; Ex. 52 to Motion (Volkswagen press release).

least some employees, ███████ did not himself ever override his clear document deletion instructions from just a few weeks earlier to ensure people understood that those instructions were superseded by the litigation hold and no longer valid as a consequence of the litigation. *See* Ex. 60 to Motion███████ at 153:8-155:8 (Q: ("So the answer is you did not send any follow-up communications to the people to whom you sent these spreadsheets in the first instance, correct?"   A: ***"No, I didn't, because I did not find any reason for the necessity of it."***).

Second, SKI's team rooms are set-up to retain documents in a recycle bin for 30 days after deletion.   *See* Ex. 73 to Motion ███████ at ¶ 13 (further stating "Backups of Microsoft SharePoint servers are retained at most for one month.").   After the Complaint in this investigation was filed, SKI notably ignored and did not ever image, preserve, or restore ***any*** of the recently deleted team room files that presumably still existed in its recycle bins while it had the opportunity to do so.   *See* Ex. 60 to Motion ███████ at 147:17-149:1.   While SKI imaged local ███████ for certain custodians in mid-May 2019, SKI did not ever preserve any aspect of the Microsoft SharePoint team rooms where SKI's employees store the vast majority of materials that would have been relevant to this investigation.   *See* Ex. 60 to Motion ███████ at 281:4-282:4 (Q: "███████, do SKI employees primarily store their documents in the team rooms?" A: "I think so, because it is true that the official storage is the team room itself.").

Even worse and more telling, as of the time that the Complaint in this Investigation was actually filed on April 29, 2019, SKI's document destruction clearly had not stopped.   On April 30, 2019, ███████ sent an email to "███████)" with a subject line "***[URGENT] Related to LG Chem lawsuit matter***" that states: "***Delete every***

*material related to the rival company from every single individual's PC, mail storage archives and team rooms.   ASAP.   Make sure to especially scrutinize [Respondent] SKBA.   PCs may even be subject to seizure and examination.   Delete this email after completing this directive.*"   Ex. 2 to Motion (SK00815537) (emphasis added).   According to his LinkedIn profile, ███████ ██████████████████████████████   *See* Staff Ex. 2 (LinkedIn Profile).

The effects of SKI's April 2019 document destruction campaign has affected the discovery process in this investigation.   On August 28, 2019, Complainants moved to compel the production of certain employee application materials and communications between SKI and former LGC employees.   *See* LGC Motion to Compel, Motion Dkt. No. 1159-004, EDIS Doc. ID No. 141525 (Aug. 28, 2019).   While the ALJ denied these particular requests based on representations from Respondents that they had met or were in the process of meeting their discovery obligations, it is now clear that many of these missing materials were identified for deletion in a spreadsheet prepared by ████████ as part of the April 2019 document deletion campaign.   *See* Order No. 9 (Sept. 11, 2019) at 1-2; Ex. 92 to Motion (SK01106996).   The earlier document destruction also presents a problem with respect to SKI's then-proposed solution for searching for responsive communications, which was specifically based on searching various custodial files for the term ██████████   *See* Ltr. from S. Sobin to ALJ Elliot, EDIS Doc. ID No. 1462036 (July 26, 2019) at 3.   Similarly, SKI also later opposed another motion to compel based on an intervening October 9, 2019 production of documents that they had obtained by searching the titles and file names of existing documents in 55 team rooms associated with the ████████████████ for the term ████████ and aliases.   *See* SKI Op. to Motion to Compel, Motion Dkt. No. 1159-008, EDIS Doc. ID No. 690978 (Oct. 10, 2019) at 8.   But this would not

be expected to capture any still existing team room documents that had been renamed to remove reference to LGC or its aliases.

At the time Complainants moved for forensic discovery that led to the issuance of Order No. 13, Complainants and Staff were only aware of and in possession of *one* of the approximately 75 spreadsheets that had been prepared and disseminated by ███████ in April 2019.  *See* LGC Motion to Compel, Motion Dkt. No. 1159-007, EDIS Doc. ID No. 1476677 (Sept. 23, 2019).   This particular spreadsheet (SK00066125) is specific to the team room for ██████████████████████ team.   *See* Ex. 64 to Motion (SK00066125); *id.*   In their opposition to forensic discovery, Respondents argued that the document was part of "routine document retention and security procedures," and that they did not have any "reasonable expectation of this litigation" at the time the spreadsheet was created.   SKI Op. to Motion to Compel, Motion Dkt. No. 1159-007, EDIS Doc. ID No. 689925 (Oct. 1, 2019) at 1.   In their opposition, Respondents never mentioned any of the 74 other spreadsheets.   *See id.*; *see also* Ex. 73 (███████████    Nor did they otherwise bring the enormous scale of SKI's April 2019 deletion exercise to the ALJ's attention.   *See id.*

As of its opposition to LGC's motion for forensic discovery, SKI's security team had already done its own fairly detailed investigation with respect to the documents listed in SKI00066125.   *See* Ex. 73 to Motion ██████████ at ¶¶ 22-29 (explaining that "[u]sing the file path information in the SK0006625 document, our [SKI's] IT department went through these documents, one by one, and examined the Team Room to see which had been deleted and which were still there.   The documents that were still in the Team Room were then captured, one at a time.   This process took several days.").   In its opposition, SKI appeared to contemplate that any forensic discovery (which it opposed) would be limited to SKI00066125.   *See* SKI Op. to

Motion to Compel, Motion Dkt. No. 1159-007, EDIS Doc. ID No. 689925 (Oct. 1, 2019).

However, Order No. 13 was clearly not so limited.   *See* Order No. 13 (Oct. 3, 2019).

> Order No. 13 requires:
>
> Respondents shall immediately engage their currently retained electronic discovery and forensics consultants, who ***shall search for and attempt to recover all documents and associated electronic information relating to either LG Chem or the subject matter of this investigation that have been deleted by Respondents, <u>including but not limited to</u> the documents referenced in SK00066125***.   The search shall be conducted in accordance with industry-standard practices and the specific review directives listed in Exhibit A to LG Chem's proposed order granting this motion.   Respondents shall notify LG Chem of when and where Respondents' consultants' forensic examination will begin, and permit one of LG Chem's retained consultants to attend and observe the process.

*Id.* (emphasis added).   In response to the Order, SKI engaged one forensic expert and the work he performed was limited to the SKI00066125 spreadsheet.   *See* Ex. 63 to Motion (Garcia Decl.).   The Complainants and the Staff expressed their view to SKI that Order No. 13 was not limited to that one spreadsheet.   *See* Motion at 30-31.   LGC's expert was also for unclear reasons left out of part of the forensic examination process that occurred shortly before SKI's expert Mr. Arnold Garcia submitted his final report.   *See* Ex. 82 to Motion (Bolanos Decl.); Ex. 63 (Garcia Decl.).

Throughout the discovery process, SKI has had the same security team that was previously responsible for running SKI's April 2019 document destruction exercise now handling discovery for this investigation.   At his deposition, ████████ disclosed that, during October 2019, SKI's security team has been working with SKI's e-discovery vendor, Fronteo, to attempt to search for and recover documents listed in the spreadsheets other than SK00066125. *See* Ex. 60 to Motion (████████ at 164:22-165:11, 329:14-330:5.   To the Staff's knowledge, this work by ████████ and Fronteo relating to the other spreadsheets was never previously

disclosed by SKI to either LGC or the Staff.   *See* Motion at 41-42.   The parameters of the work

being done by ███████ team and Fronteo in the team rooms, or why they are doing it, remain

unclear.   The Staff is concerned that the team rooms are an entirely unpreserved space that is not

even set-up to keep a record of document deletions.   *See* Ex. 73 (████████.) at ¶ 30 ("Our

[SKI's] system does not indicate when document were deleted[.]").   It is uncertain if the

integrity of the team rooms is being maintained.

## II.    LEGAL STANDARDS

Section 337(h) provides that "[t]he Commission may by rule prescribe sanctions for

abuse of discovery and abuse of process to the extent authorized by Rule 11 and Rule 37 of the

Federal Rules of Civil Procedure."   19 U.S.C. § 1337(h).   Commission Rule 210.16(a)(2) also

provides that "[a] party may be found in default as a sanction for abuse of process, under §

210.4(c), or for failure to make or cooperate in discovery, under § 210.33(b)."   19 C.F.R. §

210.16(a)(2).

Commission Rule 210.33(b) specifically sets forth the non-monetary sanctions available

for failures to comply with a discovery order.   *See* 19 C.F.R. § 210.33(b).   In relevant part,

Commission Rule 210.33(b) states that the ALJ "may take such action in regard thereto as is just,

including, but not limited to "[o]rder[ing] any other non-monetary sanction available under Rule

37(b) of the Federal Rules of Civil Procedure."   *See id.* at § 21.333(b)(6).   One of the express

bases available under Federal Rule 37(b) is "rendering a default judgment against the disobedient

party."   F.R.C.P. 37(b)(vi); *see also Organic Kimya, San. Ve Tic. A.S. v. Int'l Trade Comm'n*,

848 F.3d 994, 1003 (Fed. Cir. 2017) (stating "§ 210.33(b) is coextensive with Rule 37").

Spoliation "is the destruction or material alteration of evidence or the failure to preserve

property for another's use as evidence in pending or reasonably foreseeable litigation."   *Certain*

*Opaque Polymers*, Inv. No. 337-TA-883, Order No. 27 (Oct. 20, 2014) (citing to *Micron Tech. v. Rambus, Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)).   "[A] party must show: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed or materially altered; (2) that the records were destroyed or materially altered with a 'culpable state of mind' and (3) that the destroyed or materially altered evidence was 'relevant' to the claim or defense of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable fact finder could conclude that it would support that claim or defense."   *Certain Stainless Steel Prods. Certain Processes for Manufacturing or Relating to Same, and Certain Prods. Containing Same*, Inv. No. 337-TA-933, Comm'n Op. at 14 (June 9, 2016) (quotation omitted).

"Sanctions for spoliation should be crafted to 'vindicate the trifold aims of: (1) deterring future spoliation of evidence; (2) protecting the [complainants'] interests; and (3) remedying the prejudice [complainants] suffered as a result of [respondents] actions."   *Certain Opaque Polymers*, Inv. No. 337-TA-883, Order No. 27 at 18 (Oct. 20, 2014) (quoting *Micron Tech. Inc.*, 645 F.3d at 1329)); *see also Certain Stainless Steel Prods., Certain Processes for Manufacturing or Relating to Same, and Certain Prods. Containing Same*, Inv. No. 337-TA-933, Comm'n Op. at 21 (June 9, 2016) ("a sanction of default is necessary to deter similar spoliation of evidence and discovery order violations and to protect the integrity of judicial proceedings").

The Federal Circuit has held that the severe sanction of dismissal or default "'should not be imposed unless there is clear and convincing evidence of both bad-faith spoliation and prejudice to the opposing party.'"   *Certain Stainless Steel Prods., Certain Processes for Manufacturing or Relating to Same, and Certain Prods. Containing Same*, Inv. No. 337-TA-933, Comm'n Op. at 21 (June 9, 2016) at 15 (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d

1311, 1328-29 (Fed. Cir. 2011)).   "The fundamental element of bad faith spoliation is advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice."   *Id.*

## III.   ANALYSIS

In the Staff's view, there is no credible dispute that Respondents have spoliated evidence relevant to this investigation, and that this occurred in April 2019 (shortly before the Complaint in this investigation was filed with the Commission), and continued at least into May 2019, after the filing of the Complaint in this investigation.   Respondents also did not comply with the ensuing forensic discovery order (Order No. 13) intended to recover some of this evidence. SKI's business-wide document destruction campaign totaling in the tens of thousands of documents is highly prejudicial to the ability of the Complainants and the Staff to present evidence with respect to Complainants' claims of trade secret misappropriation, and for the ALJ and the Commission to weigh such evidence to make an informed determination.   Moreover, while perhaps a close question, there is also evidence that at least some of the actions that SKI took were done in bad faith.

Based on the Staff's understanding of the massive scale of SKI's spoliation, SKI's subsequent failure to comply with Order No. 13, and the near certainty that the documents destroyed by SKI are highly relevant to the trade secret misappropriation claims at issue in this investigation, the Staff respectfully submits that a default judgment is appropriate.   The Staff, however, also believes that SKI's response to the pending motion and the arguments that they make should be fully considered, and that SKI's arguments addressing bad faith will determine if default judgment, or lesser sanctions, are warranted.

### A.  SKI Spoliated Evidence

With respect to SKI's April 2019 document destruction, the evidence is clear that this was not "a routine security inspection," but instead a calculated, business-wide effort to intentionally destroy evidence that could be used to the benefit of LGC in ensuing litigation. *See, e.g.*, Ex. 3 to Motion (SK00968270) ("Document security inspection review.   ***The purpose is to prevent in advance problematic issues should a legal dispute arise with a competitor.***"); Ex. 50 to Motion (December 21, 2018 chat message from ████: "***LG is preparing a lawsuit So, don't leave evidence.***").   The evidence shows that, at least by the time of its April 2019 document destruction campaign, SKI did ***in fact*** anticipate a substantial likelihood that future litigation having discovery obligations would be brought against it by LGC.   *See id.*

In the Staff's view, the overall circumstances in the early part of 2019 also made U.S. trade secret litigation brought by LGC against SKI "reasonably foreseeable" as an objective matter.   *See, e.g.*, *Hynix Semiconductor v. Rambus Inc.*, 645 F.3d 1336, 1345-46 (Fed. Cir. 2011) (reasonable foreseeability "does not carry a gloss requiring that litigation be imminent, or probable without significant contingencies"); *Micron Tech. Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011) (same).   "When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry."   *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d. Cir. 2001)   Here, the facts show that SKI was in possession of large quantities of non-public, technical information concerning LGC's EV battery manufacturing processes as illustrated by the spreadsheets generated by ████; SKI had within the past few years hired over ████ employees from LGC; SKI had recently in November 2018 secured U.S. EV battery business from Volkswagen in direct competition with LGC; one of the

Respondents, SK Battery America, Inc., is a domestic company headquartered in Georgia; and

LGC had previously taken some other legal action against SKI.   *See* Motion at 7, 12-16.

Taking these facts together, the Staff is of the view that a U.S. litigation for trade secret

misappropriation brought by LGC therefore was, by no later than April 2019, reasonably

foreseeable at SKI.

   It is also not disputed that SKI engaged in an organized, business-wide effort to delete

documents that would have been highly relevant to this investigation in April 2019 before the

Complaint in this investigation was filed.   Specifically, the evidence shows that ███████ in

April 2019 created the approximately 75 spreadsheets which all expressly targeted the █████

███████ based on specifically searching for documents with the Complainants name – "███ and

its major aliases – in them.   *See* Ex. 60 to Motion ██████ at 96:1-9.   The evidence shows

SKI employees to have intentionally deleted and/or concealed documents by renaming them so

that the evidence would not be available for LGC to use in litigation.   *See* Exs. 1-3 to Motion.

   The available evidence thus shows SKI to have intentionally deleted documents relevant

to this investigation.   These actions were to SKI's sole advantage, particularly in this

Investigation.   *See, e.g.*, *Certain Stainless Steel Prods., Certain Processes for Manufacturing or

Relating to Same, and Certain Prods. Containing Same*, Inv. No. 337-TA-933, Comm'n Op. at

15 (June 9, 2016) ("The fundamental element of bad faith spoliation is advantage-seeking

behavior by the party with superior access to information necessary for the proper administration

of justice.").   Moreover, there is evidence that SKI's deletion activities continued even after this

litigation was filed.   *See* Ex. 2 to Motion (SK00815537) (post-litigation email stating **"Delete**

**every material related to the rival company from every single individual's PC, mail storage**

**archives and team rooms.   ASAP.   Make sure to especially scrutinize [Respondent] SKBA.**

***PCs may even be subject to seizure and examination.   Delete this email after completing this***

***directive."***).   To the extent that the April 2019 document destruction instructions were not

expressly overriden after the Complaint in this investigation was filed, that would heavily weigh

in favor of finding that SKI's actions were done in bad faith.   *See, e.g.*, Ex. 60 to Motion ( █████

█████ at 147:17-149:1 (failing to image or recover the recently deleted documents in team room

recycle bins), 153:8-155:8 (testimony that ███████ at least did not ever provide any follow-up

instructions to indicate that his earlier April 2019 deletion instructions were no longer in effect).

### B.   SKI's Spoliation is Highly Prejudicial to LGC and the Staff

Unfortunately, the scope of SKI's document destruction is markedly prejudicial to

Complainants, the Staff, and the development of a full and accurate evidentiary record for the

ALJ and the Commission to consider.   Based on the SKI spreadsheets with titles of deleted

documents, many of the deleted documents were likely directly relevant to LGC's claims.   *See*

Motion at 39 (discussing Ex. 86 to Motion (SK00894814) spreadsheet).   The business-wide

scale of destruction has likely also permeated every aspect of SKI's production of information

during discovery such that Complainants, as well as the Staff, ALJ, and Commission, have been

deprived of the discovery needed to construct an evidentiary record on which to reach findings

on the merits of Complainants' allegations.

### C.   SKI Failed to Comply with Order No. 13

With respect to Order No. 13, the Staff is of the view that SKI failed to substantially

comply with the forensic order.   *See* Order No. 13 (Oct. 3, 2019) (requiring Respondents to

"search for and attempt to recover all documents and associated electronic information relating

to either LGC or the subject matter of this investigation that have been deleted by Respondents,

*including **but not limited to** the documents referenced in SK00066125*").   In the Staff's view, it

was a violation of Order No. 13 for SKI to have made a unilateral decision (over objections from Complainants) to narrowly limit the scope of its forensic work only to the SKI0066125 spreadsheet where it had previously conducted its own fairly extensive investigation.   More troubling though is the fact that after Order No. 13 issued, it was clear that ███████ had put together not just one spreadsheet of documents, but 74 other such spreadsheets.   The ALJ was never made aware of this.

Accordingly, SKI appears to have substantially thwarted the forensic discovery called for by Order No. 13, particularly in light of the post-Order No. 13 disclosure of 74 additional spreadsheets similar to SKI0066125.[2, 3]   Further, because of the post-Order No. 13 revelations of the extraordinarily large scope of SKI's earlier spoliation, additional forensic discovery in efforts to undo SKI's organized effort to search for and destroy evidence relevant to this Investigation is not practical.   Therefore, the Staff is of the view that the evidence of SKI's spoliation, SKI's ensuing actions in response to Order No. 13, and the prejudice to the process of a Section 337 investigation could support a finding of bad faith on the part of SKI and a default judgment.

However, because of the severe consequences that accompany such a finding and the

---

[2]  Additionally, while it is unclear why Complainants' expert Mr. Axel Bolanos left Korea early, it was inconsistent with Order No. 13 for SKI to in his absence do further interviews and forensic discovery work relating to additional data sources (*e.g.*, the instant messenger files) without first informing either Complainants or their expert.

[3]  In the Staff's view, the discovery work being done in parallel by SKI's security team and its e-discovery vendor to attempt to search for and recover the documents listed in the 74 other team room spreadsheets is also somewhat concerning, because it appears to fall within the language of Order No. 13 (*i.e.* "search for and attempt to recover").   But this work has been conducted entirely outside of the oversight from Complainants' consultant(s) that is seemingly required by the same Order.   Accordingly, there is no way to know that the electronic footprint and contents of the team rooms are being fully preserved.

severity of the remedy sought by Complainants, the Staff acknowledges that SKI should be given a full and fair opportunity to be heard with respect to its efforts to comply with Order No. 13, and on the issue of whether the evidence weighs heavily enough to find that SKI has acted in bad faith.   In this regard, after SKI has had the opportunity to respond to the allegations in Complainants' motion, a hearing to address the issues raised by the Motion and Respondents' response would be appropriate.   Such a hearing might include testimony by the private parties' respective forensic experts, or others involved in SKI's efforts to comply with its discovery obligations in this investigation, and consideration of the most appropriate sanction.

## IV.   CONCLUSION

For the reasons set forth above, the Staff respectfully submits that based on its current understanding of the facts, the Motion and request for a default judgment should be granted. However, given the nature of the allegations against SKI and the severity of the potential sanctions, the ALJ should also consider holding a limited hearing to the extent he might find it helpful in reaching a determination on the issues raised in the Motion and responses.

Dated: November 15, 2019

Respectfully submitted,

____*/s/ Claire K. Comfort*_____
Margaret D. Macdonald, Director
Jeffrey T. Hsu, Supervisory Attorney
Claire K. Comfort, Investigative Attorney
**OFFICE OF UNFAIR IMPORT INVESTIGATIONS**
U.S. International Trade Commission
500 E Street SW, Suite 401
Washington, DC 20436
202-205-2160
202-205-2158 (facsimile)

# REDACTED EXHIBITS:

| | |
|---|---|
| Staff Ex. 1 | LGC's Final Disclosure of Asserted Trade Secrets (Oct. 7, 2019) |
| Staff Ex. 2 | LinkedIn Profile for Hae-Kwon Ryu (screenshot) |

*Certain Lithium Ion Batteries, Battery Cells, Battery*
*Modules, Battery Packs, Components Thereof, and*
*Processes Therefor*

Inv. No. 337-TA-1159

## CERTIFICATE OF SERVICE

      The undersigned certifies that on November 15, 2019, the foregoing **Commission Investigative Staff's Response to Complainants LG Chem Ltd. and LG Chem Michigan Inc.'s Motion for Default Judgment, Contempt, and Sanctions** was filed with the Commission, served upon the Administrative Law Judge, and served upon the parties in the manner indicated below:

**For Complainants LG Chem, Ltd. and LG Chem Michigan, Inc.:**

Bert C. Reiser
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201

**BY E-MAIL**
*LGCHEMITC1159.LWTEAM@lw.com*

David K. Callahan
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 637-2201

Louis S. Mastriani
Deanna Tanner Okun
Jonathan J. Engler
Asha Allam
Joshua Hartman
Lauren E. Peterson
Joshua W. Rodriguez
Paulina M. Starostka
ADDUCI, MASTRIANI & SCHAUMBERG LLP
1133 Connecticut Avenue NW, 12th Floor
Washington, DC 20036
Tel.: (202) 467-6300
Fax: (202) 466-2006

**BY E-MAIL**
*lgchem-001@adduci.com*

*Certain Lithium Ion Batteries, Battery Cells, Battery*                                          **Inv. No. 337-TA-1159**
*Modules, Battery Packs, Components Thereof, and*
*Processes Therefor*

Mark L. Hogge                                                  **BY E-MAIL**
Song K. Jung                                                   *LGChem.US@dentons.com*
Cass W. Christenson
R. Tyler Goodwyn
Scott Cummings
Younggyu Kim
Nicholas H. Jackson
Bumrae Cho
Derek A. Auito
Rajesh C. Noronha
Debodhonyaa Sengupta, Ph.D.
DENTONS US LLP
1900 K Street NW
Washington, DC 20006
Tel: (202) 496-7500
Fax: (202) 496-7756

Sarah S. Eskandari
DENTONS US LLP
One Market Plaza
Spear Tower
Suite 2400
San Francisco, CA 64105
Tel: (415) 267-4000

Renzo N. Rocchegiani
DENTONS US LLP
4655 Executive Drive
Suite 700
San Diego, CA 92121
Tel: (619) 236-1414

**For Respondents SK Innovation Co., Ltd. and SK Battery America, Inc.:**

Sturgis M. Sobin                                              **BY E-MAIL**
Shara L. Aranoff                                             *COV-SK-INNOVATION-337@cov.com*
Maureen F. Browne
Alexander D. Chinoy
Daniel E. Johnson
Augustus Golden
Kristin M. Cobb
Erin E. Biel
Emily M. Mondry
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-6000

*Certain Lithium Ion Batteries, Battery Cells, Battery*          **Inv. No. 337-TA-1159**
*Modules, Battery Packs, Components Thereof, and*
*Processes Therefor*

Gregory Nieberg
Heng Gong
Amy Bond
COVINGTON & BURLING LLP
The New York Times Building
620 Eight Avenue
New York, NY 10018-1405
Tel: (212) 841-1000

Robert T. Haslam
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306
Tel: (650) 632-4700

Michael K. Plimack
Nitin Subhedar
Stephanie M. Tennant
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street
San Francisco, CA 94105-2533
Tel: (415) 591-6000

William H.Y. Park
Scott A. Schrader
Chang Sik (Charles) Kim
Marian Sooyun Lee
COVINGTON & BURLING LLP
22nd Floor, Meritz Tower
382, Gangnam-daero
Gangnam-gu, Seoul
Korea

 _/s/   Claire K. Comfort_

Claire K. Comfort
Investigative Attorney
**OFFICE OF UNFAIR IMPORT INVESTIGATIONS**
U.S. International Trade Commission
500 E Street, SW, Suite 401
Washington, DC 20436
(202) 205-2160
(202) 205-2158 (facsimile)

*Certain Lithium Ion Batteries, Battery Cells, Battery*          **Inv. No. 337-TA-1159**
*Modules, Battery Packs, Components Thereof, and*
*Processes Therefor*

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 22, 2019, the foregoing **Public Version of Commission Investigative Staff's Response to Complainants LG Chem Ltd. and LG Chem Michigan Inc.'s Motion for Default Judgment, Contempt, and Sanctions (Motion Dkt. No. 1159-013)** was filed with the Commission, served upon the Administrative Law Judge, and served upon the parties in the manner indicated below:

**For Complainants LG Chem, Ltd. and LG Chem Michigan, Inc.:**

| | |
|---|---|
| Bert C. Reiser<br>LATHAM & WATKINS LLP<br>555 Eleventh Street NW<br>Suite 1000<br>Washington, DC 20004<br>Tel: (202) 637-2200<br>Fax: (202) 637-2201 | **BY E-MAIL**<br>*LGCHEMITC1159.LWTEAM@lw.com* |
| David K. Callahan<br>LATHAM & WATKINS LLP<br>330 North Wabash Avenue<br>Suite 2800<br>Chicago, IL 60611<br>Tel: (312) 876-7700<br>Fax: (312) 637-2201 | |
| Louis S. Mastriani<br>Deanna Tanner Okun<br>Jonathan J. Engler<br>Asha Allam<br>Joshua Hartman<br>Lauren E. Peterson<br>Joshua W. Rodriguez<br>Paulina M. Starostka<br>ADDUCI, MASTRIANI & SCHAUMBERG LLP<br>1133 Connecticut Avenue NW, 12th Floor<br>Washington, DC 20036<br>Tel.: (202) 467-6300<br>Fax: (202) 466-2006 | **BY E-MAIL**<br>*lgchem-001@adduci.com* |

*Certain Lithium Ion Batteries, Battery Cells, Battery*        **Inv. No. 337-TA-1159**
*Modules, Battery Packs, Components Thereof, and*
*Processes Therefor*

Mark L. Hogge                             **BY E-MAIL**
Song K. Jung                              *LGChem.US@dentons.com*
Cass W. Christenson
R. Tyler Goodwyn
Scott Cummings
Younggyu Kim
Nicholas H. Jackson
Bumrae Cho
Derek A. Auito
Rajesh C. Noronha
Debodhonyaa Sengupta, Ph.D.
DENTONS US LLP
1900 K Street NW
Washington, DC 20006
Tel: (202) 496-7500
Fax: (202) 496-7756

Sarah S. Eskandari
DENTONS US LLP
One Market Plaza
Spear Tower
Suite 2400
San Francisco, CA 64105
Tel: (415) 267-4000

Renzo N. Rocchegiani
DENTONS US LLP
4655 Executive Drive
Suite 700
San Diego, CA 92121
Tel: (619) 236-1414

**For Respondents SK Innovation Co., Ltd. and SK Battery America, Inc.:**

Sturgis M. Sobin                        **BY E-MAIL**
Shara L. Aranoff                       *COV-SK-INNOVATION-337@cov.com*
Maureen F. Browne
Alexander D. Chinoy
Daniel E. Johnson
Augustus Golden
Kristin M. Cobb
Erin E. Biel
Emily M. Mondry
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-6000

*Certain Lithium Ion Batteries, Battery Cells, Battery*
*Modules, Battery Packs, Components Thereof, and*
*Processes Therefor*

                                                    **Inv. No. 337-TA-1159**

Gregory Nieberg
Heng Gong
Amy Bond
COVINGTON & BURLING LLP
The New York Times Building
620 Eight Avenue
New York, NY 10018-1405
Tel: (212) 841-1000

Robert T. Haslam
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306
Tel: (650) 632-4700

Michael K. Plimack
Nitin Subhedar
Stephanie M. Tennant
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street
San Francisco, CA 94105-2533
Tel: (415) 591-6000

William H.Y. Park
Scott A. Schrader
Chang Sik (Charles) Kim
Marian Sooyun Lee
COVINGTON & BURLING LLP
22nd Floor, Meritz Tower
382, Gangnam-daero
Gangnam-gu, Seoul
Korea

                                        */s/   Claire K. Comfort*

                                        Claire K. Comfort
                                        Investigative Attorney
                                        **OFFICE OF UNFAIR IMPORT INVESTIGATIONS**
                                        U.S. International Trade Commission
                                        500 E Street, SW, Suite 401
                                        Washington, DC 20436
                                        (202) 205-2160
                                        (202) 205-2158 (facsimile)

3